1

2

3

4

5

6

7

8                        **IN THE UNITED STATES DISTRICT COURT**

9                       **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    XAVIER NAJAR,                              No. CIV S-09-2893-CMK-P

12                    Plaintiff,

13            vs.                                <u>ORDER</u>

14    T. FELKER, et al.,

15                    Defendants.

16    _____/

17                    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42

18    U.S.C. § 1983.  Pending before the court is plaintiff's amended complaint (Doc. 20).

19                    The court is required to screen complaints brought by prisoners seeking relief

20    against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

21    § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22    malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23    from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24    the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26    This means that claims must be stated simply, concisely, and directly.  <u>See</u> <u>McHenry v. Renne</u>,

1

1  84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied

2  if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon

3  which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

4  allege with at least some degree of particularity overt acts by specific defendants which support

5  the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

6  impossible for the court to conduct the screening required by law when the allegations are vague

7  and conclusory.

8

9                              **I.  PLAINTIFF'S ALLEGATIONS**

10         Plaintiff names the following as defendants: Felker, Bryant, Guillon, Hitchcock,

11  and Amero.[1]  Plaintiff states that he has a life-long history of mental disorders which cause

12  "psychological symptoms that can disrupt and diminish his capacity to control behavior. . . ."  He

13  also states that he is illiterate.  Plaintiff claims that these facts are well-documented in his prison

14  central and medical files.  More specifically, plaintiff asserts that upon arrival at High Desert

15  State Prison in 2008 he informed defendant Bryant that he was "hearing voices and having

16  flashbacks."  According to plaintiff, defendant Bryant said that there was nothing she could do

17  because she did not have access at the time to plaintiff's medical file.  Plaintiff states that he was

18  placed in his housing unit but not provided any of his prescribed medications.  Plaintiff adds:

19                 It is believed "C. Bryant" failed to inform other medical staff of
                   plaintiff's urgent need for his medications, and failed to inform custody
20                 staff of plaintiff's psychotic condition, and also failed to house plaintiff in
                   the appropriate location for his own safety and the safety of others.
21

22  / / /

23  / / /

24

25      [1]      This action proceeds on the amended complaint, which plaintiff filed as of right.
    Only Felker and Amero were named in the original complaint.  The Clerk of the Court is directed
26  to add the other named defendants to the docket.

                                          2

1    Plaintiff alleges that when he arrived at his housing unit, he informed defendants

2  Guillon and Hitchcock "that he was hearing voices and having flashbacks and asked help."

3  Plaintiff states that "they did not take plaintiff serious and they did nothing."  Plaintiff states that,

4  apparently shortly after arriving at his housing unit (perhaps a few days or weeks), he "suddenly

5  stopped at the food cart in front of him, lifted it up and tossed it toward the stairs as it crashed to

6  the ground."  Plaintiff was then restrained by defendants Guillon and Hitchcock.  Plaintiff again

7  told the officers that he was hearing voices.  According to plaintiff, defendants Guillon and

8  Hitchcock told him not to blame voices.  Plaintiff was charged with a disciplinary violation and

9  placed in administrative segregation.  During the disciplinary process, plaintiff again informed

10  defendant Bryant that he was hearing voices and that he needed his medications.  Plaintiff states

11  that he never received any medications until three months later.

12    Plaintiff's disciplinary hearing was conducted by defendant Amero.  Plaintiff

13  claims:

14    Lt. Amero simply refused to consider plaintiff's psychotic mental
      condition that contributed to his behavior and failed to consider Doctor
15    Bortez' report and findings, where he documented in his mental health
      assessment that plaintiff's mental disorder had contributed to plaintiff's
16    behavior that lead to the [rules violation report]."

17  Plaintiff adds:

18    On or about August 16, 2008, plaintiff appeared before the Warden
      T. Felker and other members of the institutional classification committee
19    (ICC) who continued further punishment upon plaintiff by placing him in a
      (super max) SHU-unit for a period of 14 months without considering
20    Doctor Bortez' report. . . .

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

## II.  DISCUSSION

Plaintiff states the facts alleged in his complaint give rise to: (1) a claim based on deliberate indifference to his serious mental health needs; and (2) a claim based on a "policy and/or custom to administer punishment upon the mentally ill."  Plaintiff seeks compensatory and punitive damages.  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

1   is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

2   activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

3   Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

4           The requirement of deliberate indifference is less stringent in medical needs cases

5   than in other Eighth Amendment contexts because the responsibility to provide inmates with

6   medical care does not generally conflict with competing penological concerns.  See McGuckin,

7   974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

8   decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

9   1989).  The complete denial of medical attention may constitute deliberate indifference.  See

10  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

11  treatment, or interference with medical treatment, may also constitute deliberate indifference.

12  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

13  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

14      **A.      Serious Medical Need**

15          Plaintiff has not alleged a sufficiently serious medical need in order to invoke

16  Eighth Amendment protection.  He claims that he has a long-standing and well-documented

17  history of mental illness, including "hearing voices and having flashbacks."  He also states that

18  this condition makes it difficult for him to control his behavior.  By way of example, he offers

19  the food cart incident, which he attributes to behavior control problems related to his mental

20  illness.  The doctor's report plaintiff refers to in his complaint is attached as an exhibit and

21  reflects that the doctor indeed stated that plaintiff has a mental disorder which can diminish his

22  capacity for behavior control.  The doctor specifically opined, however, that plaintiff's condition

23  "[d]oes not usually require prompts to initiate/complete activities of daily living."  Thus, while

24  the condition appears to have been worthy of some comment by the doctor, it does not

25  significantly impact activities of daily living.  Nor is plaintiff's mental condition accompanied by

26  substantial pain.  There is no allegation that any failure to treat plaintiff's condition could or

5

1   would result in unnecessary and wanton infliction of pain.  As to plaintiff's claim that he was not

2   provided medications for three months, such delay does not give rise to a cognizable claim

3   because plaintiff has not alleged any further injury as a result of the delay.

4          **B.      <u>Custom and/or Policy</u>**

5          Plaintiff makes a more general claim that prison officials maintain a custom

6   and/or policy which results in unfair treatment of the mentally ill.  Plaintiff, however, does not

7   allege facts suggesting any such custom or policy.  Rather, he offers by way of one example

8   allegations relating to what happened to him.  Specifically, he states that information from his

9   doctor concerning his medical condition was ignored during his disciplinary hearing and later

10  placement hearings.  At best, such allegations may indicate a potential due process violation with

11  respect to plaintiff's disciplinary proceedings.[2]  They do not, however, plausibly suggest a

12  custom or policy with respect to all mentally ill inmates.  Taking plaintiff's allegations as true,

13  the complaint indicates that plaintiff was found guilty of a disciplinary violation and punished

14  accordingly because he threw the food cart and not because of some undefined custom or policy

15  generally applicable to mentally ill inmates.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24

25          [2]      Any due process claim, however, is belied by documents attached to plaintiff's
    complaint which clearly indicate that plaintiff's mental health issues were taken into
26  consideration during his disciplinary hearing.

**III.  CONCLUSION**

1

2          Because it does not appear possible that the deficiencies identified herein can be

3   cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of

4   the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

5   Plaintiff shall show cause in writing, within 30 days of the date of this order, why this action

6   should not be dismissed for failure to state a claim.  Plaintiff is warned that failure to respond to

7   this order may result in dismissal of the action for the reasons outlined above, as well as for

8   failure to prosecute and comply with court rules and orders.  See Local Rule 110.

9          IT IS SO ORDERED.

10

11   DATED: May 6, 2010

12

13                                          **CRAIG M. KELLISON**
                                           UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26